HARVEY HAYUTIN, Transferee, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hayutin v. Commissioner
Docket Nos. 4390-69, 4391-69, 4392-69, 4393-69, 4394-69.
United States Tax Court
T.C. Memo 1973-16; 1973 Tax Ct. Memo LEXIS 274; 32 T.C.M. (CCH) 58; T.C.M. (RIA) 73016; January 23, 1973, Filed *274 Held, transferee liability not proved by respondent. Gene F. Reardon, for the petitioners. Ralph V. Bradbury and Arthur B. Bleecher, for the respondent. DRENEN MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined that petitioners, as transferees of assets of the estates of their parents, 2 Jacob and Ida Hayutin, are liable for the $65,000 deficiency in the 1956 income tax of Jacob and Ida Hayutin, plus statutory interest. The liability of each petitioner was determined as follows: Docket No.
Petitioner
Transferee liability 4390-69
Harvey Hayutin
$25,000.00
4391-69
24,159.66
4392-69
Marvin Hayutin
25,000.00
4393-69
24,159.66
4394-69
Ruth Berger
5,000.00
*275 The cases were consolidated for trial. The issue for decision is whether the estates of Jacob Hayutin and Ida Hayutin each contained a contractual obligation between the decedent and Harvey and Minna Hayutin, which was distributed to petitioners upon the settlement and discharge of the two estates. If there were such assets in the estates, then we must also determine their value. FINDINGS OF FACT The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Harvey Hayutin was a resident of Beverly Hills, Calif, when he filed his petition herein. During the period at issue, he was married to Minna Hayutin. Petitioner Marvin Hayutin was a resident of New York, N.Y., when he filed his petition herein. Petitioner Ruth Berger was a resident of Denver, Colo., when she filed her petition herein. 3 Ida Hayutin and Jacob Hayutin were the parents of petitioners Marvin Hayutin, Harvey Hayutin, and Ruth Berger. They also had a fourth child, Neva Jean Caspe, who is not a party to this proceeding. Both Jacob and Ida are deceased, Ida having died at about the age of 78 on March 5, 1964, and Jacob having died at the age of 87 *276 on July 4, 1964. On March 28, 1962, respondent sent Ida and Jacob Hayutin a joint statutory notice of deficiency determining deficiencies in their income taxes for the taxable years 1955 and 1956. On May 15, 1962, Jacob and Ida Hayutin filed a petition with the Tax Court requesting a redetermination of those deficiencies. [2] On July 24, 1968, the Court entered a stipulated decision in which it determined that with respect to petitioners Jacob and Ida Hayutin there was no deficiency in income tax for the taxable year 1955 and that there was a deficiency in income tax for the taxable year 1956 in the amount of $65,000. The Court's decision became final on October 22, 1968. The deficiency of $65,000 plus statutory 4 interest in the amount of $44,285.48 for an aggregate amount of $109,285.48, was assessed on August 23, 1968. However, respondent was unable to collect any of the deficiency or the interest from their estates; at that time a decree of final settlement and discharge had been entered by the probate court in both estates. *277 Both Jacob and Ida died testate and their wills named their son, Harvey Hayutin, as the executor of their estates. At their deaths, both Ida and Jacob were residents of Denver, Colo., and their estates were probated before the county court of the City and County of Denver, Colo. (hereinafter probate court). Ida Hayutin's will left her estate in three equal parts to Jacob, Marvin, and Harvey. The Federal estate tax return for her estate, filed July 22, 1965, reported as the principal asset in the estate a contractual obligation of Harvey and Minna Hayutin, made January 1, 1963, due January 1, 1983, with interest at 6 percent payable annually. The return further discloses that interest in the amount of 5 $5,013.61 had accrued on the obligation at Ida's death, and its total value was $75,480.49, or $70.466.88 plus the interest. All of the remaining papers filed with the probate court pertaining to the settlement of Ida's estate, including the State inheritance tax returns, the estate inventory, [3] other interim probate court reports, and the degree of final settlement and discharge indicate the existence of the obligation. The only other assets listed in the inventory *278 of the estate were personal property and a small amount of cash. No estate tax was paid by Ida's estate. Harvey Hayutin, as executor of the estate, paid State inheritance tax on the obligation. Additionally, the original estate income tax returns for the taxable years 1964 and 1965 report amounts of $688.58 and $2,100, respectively, received as interest on the obligation. However, those returns reported no income tax due. The report of appraisement and assessment of tax filed in the probate proceedings of the estate places a value on the obligation of $75,480.49. The report further reflects that Ida's estate had an aggregate value of $72,478.99, after paying administrative expenses; and Jacob Hayutin, Marvin Hayutin, and Harvey Hayutin each received a one-third interest 6 in it having a value of $24,159.67. The decree of final settlement and discharge entered August 25, 1966, and filed with the clerk of the probate court recites the same distribution of Ida Hayutin's estate. It was accompanied by two receipts, one signed by Marvin Hayutin and one by Harvey Hayutin, as executor of *279 Jacob's estate, which acknowledge receipt of assets of Ida's estate, including a one-third interest in the above obligation. Jacob Hayutin's will left his entire estate to his four children, Marvin, Harvey, Ruth, and Neva Jean. His two sons, Marvin and Harvey, each received five-twelfths of the estate, and his two daughters, Ruth and Neva Jean, each received one-twelfth of the estates. The estate tax return for Jacob's estate indicates the two principal assets therein were a one-third undivided interest in the residuary estate of Ida Hayutin, valued at $24,057.74, and a contractual obligation of Harvey and Minna Hayutin made on January 1, 1963, and due on January 1, 1983, with interest at 6 percent payable annually. Since no interest had been paid on the debt at Jacob's death, the obligation in the face amount of $70,466.88, had accumulated interest in the amount of $6,493.34. However, the return states that the 7 total value of Jacob's estate was no more than $60,000. [4] The only other assets listed in the inventory of the estate were valued at less than $1,000 and no estate tax was paid by the estate. *280 As in the case of Ida Hayutin's estate, the estate and inheritance tax returns and all papers filed with the probate court pertaining to the settlement of Jacob's estate disclose the existence of the two contractual obligations owed to Ida and Jacob by Harvey and Minna. The income tax returns for Jacob's estate for the taxable year 1965 8 and 1966 reported interest income received in the amounts of $700 and $800 respectively, but no tax was due. Harvey Hayutin, as executor of the estate, paid State inheritance tax on the obligations. A decree of final settlement and discharge of Jacob's estate was entered on April 6, 1967, and filed with the probable court on December 4, 1968. The decree reflects that final distribution of the estate was made in accordance with the provisions of Jacob's will. The decree further recites that the personal property of Jacob's estate included the two contractual obligations. The decree was accompanied by four receipts, one from each legatee, which state that each received his proper share of the estate. On their joint income tax return for the taxable year 1963, Harvey and Minna Hayutin deducted $2,397.16 for interest payments made to *281 Jacob and Ida Hayutin, and $8,456.03 for interest paid to Marvin Hayutin. The return also indicates that the Hayutin family partnership was dissolved as of January 1, 1963. On their joint income tax return for 1964, Harvey and Minna claimed a deduction in the amount of $971.87 for interest paid to Marvin Hayutin. Additionally, on their joint income tax return filed for the taxable year 1965, they again deducted $3,478.01 as interest expense paid to the estates of Jacob and Ida Hayutin, and $12,212.42 as interest paid to Marvin. 9 The same attorney probated the estates of Jacob and Ida Hayutin. He included the contractual obligations in each of the estate's inventories as a result of reading a letter, dated December 19, 1963, in his firm's files in which Harvey and Minna Hayutin putatively agreed to buy out Harvey's parents' and Marvin Hayutin's interests in a family partnership, designated as the H.F.T. Co., a Colorado general partnership, at book value as required in the partnership agreement, which value had been determined and agreed upon by the parties. From the 1962 partnership tax return, this attorney determined that the book value of each of the one-quarter interests *282 of Jacob and Ida Hayutin in the partnership was $70,000. The letter upon which the attorney relied was dated December 13, 1963, and was on the firm stationery but was signed by another attorney in the firm who did not testify in these proceedings. The letter set out the terms of a plan under which Harvey and Minna had exercised their right to purchase the partnership interests of Jacob, Ida, and Marvin in the H.F.T. Co. partnership as of January 1, 1963. The purchase price was to be paid in promissory notes, bearing 6 percent interest per annum, fully maturing 20 years after date, the principal to be paid in 10 equal installments with the first installment due on the 11th anniversary date of the notes. The letter requested the 10 addressees, who were Jacob, Ida, Marvin, Harvey, and Minna, to sign the letter to confirm their understanding of the plan, which they all did. The attorney who prepared the returns and probate papers for the two estates discussed them with Harvey before they were filed, but he had no independent knowledge of the obligations described therein. He listed the purported obligations from Harvey and Minna to Jacob and Ida on the inventories and returns *283 for their estates in accordance with his understanding of the terms of the agreement reflected in the letter of December 13, 1963. However, no promissory notes or other written documents were ever executed pursuant to the provisions of the letter. As a result of a dispute arising from the final distribution of Jacob Hayutin's estate, Harvey paid his sister Neva Jean $5,000 in settlement of her claim to a one-twelfth interest. Subsequently, because he paid Neva Jean, Harvey promised to pay $5,000 to his other sister, Ruth, who also had a one-twelfth interest in the estate. Neither Ruth nor Harvey felt he was obligated to make the payment, and both considered it a gift. Marvin Hayutin, Harvey's brother, has never received any property in the distribution of his parents' estates, other than a few small personal mementos, although he did execute receipts for distributions from the estates which included interests in the contractual obligations. Furthermore, 11 he does not believe that Harvey is obligated to him for any payments with respect to the dissolution and purported sale of his family partnership interest. On October 7, 1970, Marvin, Harvey, Ruth, and Neva Jean *284 jointly filed two petitions with the probate court to reopen both of the estates of their parents. Their purpose in reopening the estates was to change the records by deleting from them all references to the two contractual obligations and to describe the amounts paid by Harvey and Minna Hayutin to the estates as advances and not interest on the contractual obligations. The probate court granted the petition on the same day it was submitted with one qualification that the order was "without prejudice to any other parties including taxing authorities." All of the papers reopening and closing the two estates were dated October 7, 1970. Accordingly, Harvey Hayutin, as executor for the two estates, filed amended Federal estate tax returns and state inheritance tax returns to expunge the obligations from the records and amended Federal estate income tax returns to delete from the records the amounts of interest income previously reported as being received by the estates. Attendantly, Harvey and Minna Hayutin were advised to amend their joint income tax returns to show that they had paid no interest to Harvey's parents or their estates. 12 Finally, the four children, Marvin, *285 Harvey, Ruth, and Neva Jean, entered into an agreement in which they declared that no contractual obligation between their parents, Jacob and Ida Hayutin, and Harvey and Minna Hayutin ever existed or was includable in their parents' estates. On June 23, 1969, respondent sent notices of liability to Marvin, Harvey, and Ruth, informing them that as transferees of assets of their parents' estates, they were liable for Jacob and Ida Hayutin's 1956 income tax deficiency of $65,000, plus statutory interest, to the extent of the fair market value of the assets received from the two estates. Thus, respondent determined that Marvin Hayutin and Harvey Hayutin, as transferees of assets of Jacob Hayutin's estate, are each liable for $24,159.66, plus statutory interest. Respondent determined that Ruth Berger, as a transferee of assets of Jacob Hayutin's estate, is liable for $5,000, plus statutory interest. The H.F.T. Co. was a partnership consisting of Ida, Jacob, Harvey and Minna, and Marvin Hayutin. Jacob started in the bicycle business in 1900, and the children helped him in the business as they grew older. The partnership apparently grew out of this business, and it continued in that *286 13 business until the end of World War 11, at which time Harvey and Marvin's interests had shifted elsewhere. Subsequently, the partnership was used to some extent by Harvey and Marvin for trading and investment purposes until it was dissolved as of December 31, 1962. [5]
OPINION Respondent proceeded against petitioners as transferees under section 6901, Internal Renenue Code of 1954, [6] which provides, in pertinent part: SEC. 6901. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income, estate, and gift taxes. - (A) Transferees. - The liability, at *287 law or in equity, of a transferee of property - 14 (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * * (b) Liability. - Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax. Under section 6902(a), respondent bears the burden of proof to show that petitioners are liable as transferees of property of a taxpayer, but he does not have to show that the transferor was liable for the tax. [7] In meeting his burden of proving transferee liability respondent must show that property of value was transferred from the transferors to the alleged transferees without adequate consideration during or after the period for which the liability accrued; that the liability has not been paid; and that the transferors were either insolvent at the time of the transfers or rendered insolvent thereby. ; ; , *288 affirmed per curiam (C.A. 6, 1960). There is no dispute in this case that the estates of both Jacob and Ida were either insolvent at their inception, or became insolvent when, and if, the purported notes were distributed to the petitioners herein. Respondent perceives the ultimate issue to be the value of the contractual obligations which he argues passed from Jacob and Ida Hayutin's estates to petitioners. Petitioners, on the other hand, first contend that in fact no such obligations ever existed, and that even if they did or do exist, such obligations are legally unenforceable and, therefore, have no value. The issue presented is thus essentially factual. Respondent relies almost entirely on the original papers filed with the probate court in the settlement and discharge of both Jacob's and Ida's estates and the various tax returns described in our findings of fact to carry his burden of proving transferee liability. The *289 entries reflected in that documentary evidence support respondent's position that there were actual obligations owing by Harvey and Minna to both Jacob and Ida at the times of their deaths, which were assets of their estates and were transferred to petitioners. However, respondent completely ignores, or dismisses as self-serving, the amended documentary evidence approved by the probate court in 1970, the testimony of respondent's own witness, the attorney who prepared all of the probate papers, and the testimony of Harvey and Marvin Hayutin, and Ruth Berger, all of which disclaimed the existence of the obligations. 16 We agree with respondent that the reopening of the two estates to expunge the purported obligations from both estates might well have been self-serving, particularly in view of the timing, following as it did the issuance of the notices of transferee liability herein; but we also have the impression that the original probate documents likewise may have been self-serving statements for a different scheme. Thus, with the paucity of direct, substantive evidence in the record in support of the existence of the purported obligations from Harvey and Minna to Jacob *290 and Ida, we are not convinced that such obligations did in fact exist. In our careful study of the record, we could not help but note several means by which respondent could have adduced sufficient evidence to substantiate the basic elements of his position, assuming, arguendo, that his position is the correct one. Such tangible evidence as H.F.T. Co. partnership tax returns, written memorials of the purported obligations, financial records of the partnership's assets, or documents acknowledging the transfer of the partnership assets to Harvey and Minna, would have substantially strengthened respondent's case. Likewise, testimonial evidence from Neva Jean Caspe concerning Harvey's $5,000 payment to her in settlement of Jacob's estate; from Harvey's CPA concerning the books and records of H.F.T. Co. or its valuation in 1963; or from the attorney who composed the 1963 letter which alluded to the 17 partnership buy-out, with regard to the truth of the letter of the events which prompted his drafting it, might have carried respondent's burden of proof. At trial, no direct evidence of this nature was forthcoming, however, and we are left to speculate whether such evidence was *291 obtainable, or, if presented, whether it would have actually supported respondent's position. On the other hand, petitioners have placed in the record substantial credible evidence that no such written manifestations ever existed and that there were no partnership interests of value to purchase. This, in itself, casts considerable doubt on the enforceability and value of the purported debts. Respondent balances his position partially on Harvey's and Minna's payments to Jacob and Ida, or their estates, and to Marvin, which they deducted on their 1963, 1964, and 1965 income tax returns as interest expenses. Respondent also points to Harvey's promise of $5,000 to both of his sisters upon the settlement of his father's estate. Such evidence, he would have us believe, lends support to his position that Harvey and Minna bought out the family partners in H.F.T. Co. The questioned payments, however, are no more than circumstantial evidence at best, which leaves us unpersuaded for the following reasons. Harvey explained the interest payments to Jacob and Ida, or their estates, as family contributions made to cover 18 the living expenses of his parents and the costs of administering *292 the two estates. His testimony is corroborated by the facts that the interest deductions claimed by Harvey for amounts paid to his parents or their estates (1) do not amount to the annual 6 percent interest due on the purported $70,000 notes; (2) do not coincide with the amounts of interest reported as being received by the estates; and (3) appear to have been sufficient only to supplement his parents' income or pay for the administration expenses of their estates. The evidence concerning Harvey's interest payments to Marvin during 1963, 1964, and 1965 is not complete enough to support respondent's position either. For though the payments clearly were made, there is no documentary or testimonial evidence to link the interest payments to the purported partnership buy-out. Both Harvey and Marvin testifies at trial, but neither was questioned about the origin of the interest payments. Furthermore, the payments to Marvin varied substantially from amounts far less than the 6 percent purportedly due annually to amounts in excess of 17 percent of the purported obligation. Harvey explained his $5,000 payments to his two sisters as nuisance value, in the case of Neva Jean, and a gift, *293 in the case of Ruth. His testimony was supported by Ruth's testimony and the agreement dated October 7, 1970, in which all the heirs of the two estates agreed that there was no 19 contractual obligation from Harvey and Minna to either Jacob or Ida. Accordingly, the evidence concerning the interest payments is far from conclusive; instead, it is ambiguous, which again leaves us to speculate about its relative significance. On further reflection, our impression from the record is that the purported plan for Harvey to buy out the partnership interests of Marvin and his parents may have been a scheme whereby Harvey could support his parents with payments that would be deductible as interest on his tax returns. It seems unlikely there was any expectation that any part of the principal amounts involved would ever be paid to Jacob and Ida, because they were about 86 and 77 years old, respectively, when the notes were to be dated, and the first payments of principal were not due to be paid until 10 years later. There is also evidence that the principal of these notes would have been forgiven under new wills to be executed by Jacob and Ida. Finally, there is no evidence in *294 the record that any consideration passed from Jacob and Ida to Harvey and Minna to support the purported obligations. We can find no clear evidence that there was even a viable partnership interest in existence in 1963. We can assume that the H.F.T. Co. partnership had some business activity in 1956 to give rise 20 to the tax liabilities of the partners which were determined by a stipulated decision entered by this Court. But we have no evidence, except the very vague testimony of Harvey, what those activities were or whether they continued up until 1963. Transferee liability is determined under State Law. . Respondent relies heavily on the fact that the probate court in Colorado approved the settlement of the two estates including the transfer to the beneficiaries of undivided interests in the obligations from Harvey and Minna to Jacob and Ida. However, the probate court in Colorado also approved the reopening of the two estates to expunge those assets from the two estates, and we have nothing to show that the one action was any less valid than the other. It should be apparent from the above discussion that the *295 evidence in this case with regard to the existence or nonexistence of the obligations, upon which the transferee liability must be determined, is quite conflicting, and we are unable to determine from the record that the obligations did exist. While we realize that Harvey Hayutin is probably responsible for a great deal of the uncertainty, and may have profited income taxwise as a result thereof, this cannot serve to carry respondent's burden of proof with respect to 21 transferee liability. To support his claim of transferee liability in this case respondent must prove that there were legally enforceable obligations of value, interests in which were transferred from Jacob and Ida to petitioners herein. This he has failed to do. We must decide these cases for petitioners. Decisions will be entered for the petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Harvey Hayutin, transferee, Docket Nos. 4390-69 and 4391-69; Marvin Hayutin, transferee, docket Nos. 4392-69 and 4393-69; and Ruth Berger, transferee, docket No. 4394-69. ↩
2. While the record does not disclose the basis for the deficiencies determined by the commissioner in that case (Tas Court docket No. 1882-62), testimony of the attorney who represented the taxpayers indicates that the principal adjustment giving rise to the proposed deficiency was "the partnership income" in the amount of $348,287.61; that there were companion cases involving Marvin Hayutin and Harvey Hayutin in which the Commissioner determined that "the partnership" was a two-man partnership between Marvin and Harvey, while in the case of Jacob and Ida, he determined that "the partnership was a three-man partnership with Jacob as the third partner; that all three cases were settled as a part of an overall settlement. The record does reveal that a stipulated decision was entered by the Tax Court on July 24, 1968, the date of the decision in the case of Jacob and Ida, in a case of Harvey and Minna Hayutin (docket No. 94456) reflecting no deficiency for 1955 and a deficiency in income tax of $70,000 for 1956. ↩
3. The estate inventory reflects the collectability of the obligation to be "Good." ↩
4. Concerning the value of the two obligations, a footnote in the estate tax return for Jacob Hayutin's estate discloses: "Item 2 consists of a contractual obligation identical with that described in Item 1 and other miscellaneous property. Neither obligation is secured in any fashion. * * * The Internal Revenue Service has made demand upon Harvey Hayutin, one of the joint obligors on the contractual obligations described above, for assessments of income tax deficiencies, penalties and interest for the taxable years 1955 and 1956 of approximately $1,500,000.00. In addition, Harvey Hayutin is a defendant in a lawsuit presently pending for which judgment is sought in the amount of $800,000.00. Minna Hayutin, the other obligor on the above contractual obligations, is the wife of Harvey Hayutin. Because of the income tax assessments and contingent liability in the lawsuit which he is not able to pay, Harvey Hayutin's resources and funds are completely restricted. The present circumstances make the worth of the above obligations a matter of serious doubt, and the value of the entire estate does not exceed the amount shown in this Schedule." ↩
5. This information is gleaned from the testimony of Harvey. Unfortunately, the record contains no documentary or other evidence with respect to the operations, income, or assets and liabilities of the partnership immediately prior to and at the time of its dissolution, out of which the purported obligations here involved arose. ↩
6. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
7. There is no question of the liability of the transferors for tax here; that liability was determined by a stipulated decision entered by this Court. And it is also clear that the liability has not been paid. 15 ↩